## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DEBORAH BOLTON,

          Plaintiff,

vs.                                       CASE NO. 3:09-cv-900-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

_____

### ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB").  Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated February 2, 2010 (Doc. #16).  The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.  Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations.

Accordingly, the instant matter has been decided on the written record.  For the reasons set out herein, **the Commissioner's decision is AFFIRMED**.

## I. Procedural History

Plaintiff protectively filed an application for disability insurance benefits ("DIB") on September 2, 2003 (Tr. 155-57).  Plaintiff's application was denied both initially and upon reconsideration (Tr. 130, 134-35).  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 13, 2005 (Tr. 594-639). The ALJ found that Plaintiff was not disabled in her decision of December 21, 2005 (Tr. 28-39).  Plaintiff then requested review of the hearing decision by the Appeals Council (Tr. 40-41).  On May 16, 2006, the Appeals Council remanded the case for further development of the record and issuance of a new decision (Tr. 42-45).  As a result, the ALJ held an additional hearing on September 6, 2006 (Tr. 548).  Subsequently, in a hearing decision dated November 22, 2006, the ALJ concluded that Plaintiff was capable of performing past relevant work as a telemarketer and denied Plaintiff's application for benefits (Tr. 13-27). The Appeals Council denied Plaintiff's request for review (Tr. 7-12). Plaintiff thereafter appealed to this Court, which remanded the case for a new decision (Tr. 660A-681).  *See Bolton v. Astrue*, No. 3:07-cv-612-J-HTS (M.D. Fla. 2008).

On remand, the ALJ held an additional hearing on December 16, 2008 (Tr. 721-96) At the hearing, the ALJ obtained testimony from Plaintiff, a medical expert, and a vocational expert (Tr. 721-95).  In a decision dated June 18, 2009, the ALJ found Plaintiff capable of performing her past relevant work, and other work that exists in substantial numbers in the regional and national economy (Tr. 643-59).  Plaintiff never filed written exceptions with the Appeals Council; thus, the ALJ's June 18, 2009 decision became the final decision of the Commissioner (*see* Tr. 640-42).   Plaintiff now seeks the Court's review of the ALJ's unfavorable decision (Doc. #1).

2

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520(a)(4)(i-v);[1] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

---

[1] All references made to 20 C.F.R. will be to the 2010 edition unless otherwise specified.

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). It is a plaintiff's burden to provide the

relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations.  20 C.F.R. § 404.704.

### III. Background

Plaintiff was born in 1956; thus, she was 50 years old when her insured status expired on March 31, 2007 (Tr. 645, 726).  Plaintiff graduated high school and attended a few semesters of college (Tr. 555).  She has past relevant work experience as a telemarketer, school bus driver, shuttle bus driver, and cafeteria worker (Tr. 556-57).  Plaintiff alleges that she has been unable to work since May 5, 2003 due to constant pain stemming from a work-related back injury that occurred on October 8, 2002 (Tr. 186).  More particularly, Plaintiff reportedly lifted a box of frozen hamburger patties that weighed one hundred pounds, causing her severe back pain (which manifested itself four days later on October 12, 2002) (Tr. 240, 258).

On October 22, 2010, Plaintiff presented to John Trainer, M.D. ("Dr. Trainer") for occupational health treatment (Tr. 247).[2]  X-rays performed on November 22, 2002 of Plaintiff's thoracic spine were normal (Tr. 246).  On November 25, 2002, Dr. Trainer reported that Plaintiff was immediately capable of returning to work, albeit with restrictions regarding the need to alternate sitting and standing, no use of ladders, no overhead work, and no lifting above ten pounds (Tr. 244).  On December 2, 2002, Dr. Trainer again noted that Plaintiff was capable of returning to work "immediately," with the above referenced restrictions (Tr. 243).  On December 9, 2002, Dr. Trainer reiterated his findings of December 2, 2002, *supra* (Tr. 335, 238).  Likewise, on December 17, 2002, Dr. Trainer

---

[2]The doctor's signature is illegible; however, the ALJ refers to this provider as "Dr. Trainer" (Tr. 655).

5

found Plaintiff could immediately return to work; however, he increased the amount of weight he believed she was capable of lifting to twenty pounds (Tr. 229-30).

Per Dr. Trainer's recommendation, Plaintiff attended physical therapy sessions for her back pain on December 3, 5 and 9, 2002 (Tr. 235-42).  On December 12, 2002, however, Plaintiff was discharged from physical therapy for being "non-compliant" (Tr. 231-32, 235-42).  Plaintiff stated that physical therapy made her feel "irritated" after treatment (Tr. 231).  In the Discharge Report, the physical therapist noted that Plaintiff presented with a normal gait pattern and had no trouble sitting or standing (Tr. 231).

A physical therapy Progress Report, dated December 3, 2002, states that Plaintiff did not show any facial expressions throughout the exam even though she was complaining of sharp pains with any type of movement (Tr. 240-41).  A physical therapy Progress Report, dated December 9, 2002, states Plaintiff presented with an "inconsistent pain pattern" (Tr. 235).  Specifically, the physical therapist reported that, although Plaintiff stated that her signs and symptoms had not changed since her last visit, "she was able to demonstrate 5/5 strength about her lower left extremity unlike her evaluation 2 days [prior]" (Tr. 235).

A MRI of the lumbar spine was performed on December 11, 2002, which revealed degenerative disc changes at L5-S1 with a very small left paracentral posterior disc protrusion/herniation (Tr. 233).

On January 27, 2003 and February 3, 2003, Plaintiff presented to Hugh Switzer, M.D. ("Dr. Switzer"), an orthopedist (Tr. 257-58).  On both occasions, Dr. Switzer recommended trigger point injections and assessed Plaintiff's work status as "light duty" (Tr. 257-58).

6

On March 24, 2003, Plaintiff underwent a physiatric[3] evaluation performed by Howard Weiss, D.O. ("Dr. Weiss") (Tr. 264-66).  Plaintiff reported low and upper back pain with numbness and tingling in both legs (Tr. 264).   Dr. Weiss' impression was of lumbosacral sprain and degenerative disk disease at L5-S1 (Tr. 266). Dr. Weiss found Plaintiff could perform sedentary work for eight hours per day with a maximum lifting of five pounds (Tr. 266).  On June 18, 2003, Dr. Weiss again placed Plaintiff on sedentary work status, eight hours per day (Tr. 267).

On July 14, 2003, Plaintiff began receiving treatment from Bao Pham, M.D. ("Dr. Pham"), a pain management specialist (Tr. 284-89).  Plaintiff reported to Dr. Pham that she experienced back pain that completely interfered with all of her daily activities, including walking (Tr. 286).  Dr. Pham recommended ice/hot pack treatment, joint mobilization, and Lortab, a narcotic pain medication (Tr. 280).  On July 28, 2003, Dr. Pham administered four trigger point injections (Tr. 275).  On August 5, 2003, Plaintiff reported a pain level of ten on a scale of one to ten, with ten being the highest threshold of pain (Tr. 272A). Nevertheless, Dr. Pham reported that Plaintiff was capable of returning to "full-time" sedentary work (Tr. 272A).

On August 26, 2003, an independent medical evaluation was performed by Mark Hofmann, M.D. ("Dr. Hofmann"), a board certified physical medicine and rehabilitation specialist (Tr. 290-94).   Dr. Hofmann observed many inconsistencies during his examination of Plaintiff (Tr. 293).  For instance, Dr. Hofmann noted that Plaintiff reported

---

[3]Physiatrics relates to physical medicine and rehabilitation.  JOHN HOPKINS MEDICINE, http://www.hopkinsmedicine.org/Rehab/services/Physiatric_eval_treatment.html (Mar. 22, 2011).  It should be noted that the judiciary does not exercise responsibility over the content or current viability of the URL provided.

that her pain was at a level ten, but that she was not on any pain medication and did not appear uncomfortable (Tr. 293).  In addition, Dr. Hofmann noted that Plaintiff reported pain with maneuvers that did not place significant stress on her spine (Tr. 293), and that she reported pain with supine straight leg raising tests, but reported no symptoms with the test performed in the seated position (Tr. 293).[4]  Dr. Hofmann remarked that, although Plaintiff attributes her back pain to the November 8, 2002 lifting incident, she "admits that she did not experience lower back pain until 11/12/02.  If significant injury occurred as a result of the 11/08/02 lift, I would have expected back pain immediately or at least the first day of the incident, which was not the case" (Tr. 293).  Dr. Hofmann concluded that, in his opinion, work restrictions are not appropriate with respect to Plaintiff's November 8, 2002 lifting incident (Tr. 294).

On July 18, 2003, Plaintiff was referred to Arnold Graham Smith, M.D. ("Dr. Smith") by the Workman's Compensation division for evaluation (Tr. 332).  On a Patient History Sheet, Plaintiff remarked that pain medication (Lortab and Soma) reduces her pain "sometimes" (Tr. 335; *see also* Tr. 337).[5]  Dr. Smith noted that Plaintiff's MRI revealed "a

---

[4]Bruce Witkind, M.D. ("Dr. Witkind"), a medical expert and neurosurgeon who testified at the 2008 hearing, stated that the fact Plaintiff reported she experienced pain with supine maneuvers, but not with seated maneuvers, is inconsistent (Tr. 740).  In addition, in the Memorandum in Support of the Commissioner's Decision, Defendant cites J. Stantely McQuade, MEDICAL INFORMATION SYSTEM FOR LAWYERS, § 6.167 (2d ed. 1993) for the proposition that an individual who suffers from disc disease should experience pain at the same angle on bent leg raises as on straight leg raises (Doc. #23 at 12 n. 4).

[5]Plaintiff's statements of record are inconsistent with respect to whether prescribed pain medication relieves her pain.  For instance, here she states that the medications "sometimes" help; however, at the 2005 and 2006 administrative hearings, Plaintiff reported that her medications do not help at all (*see e.g.,* Tr. 573, 608-09).  Similarly, in her application for benefits, Plaintiff stated that she experiences pain twenty-four hours per day and that medications do not relieve her pain (Tr. 194-95).  She also maintains that she does not take pain medication because she is afraid of becoming addicted to such medication(s); however, the record reflects that Plaintiff has requested pain medication (Tr. 263), and that on at least one occasion Dr. Smith "declined to give her further narcotic medication" (Tr. 333, 621).

degenerate lumbosacral disc with slight bulge on the left" (Tr. 333).  He stated he did not believe Plaintiff to be a candidate for surgical intervention (Tr. 333).  Dr. Smith stated that he wanted to obtain some standing x-rays in order "to see if there is anymore to [her] injury than meets the eye on the MRI" (Tr. 333).[6]   Dr. Smith prescribed Plaintiff medication to help her sleep, but "declined to give her further narcotic medication" (Tr. 333).

On November 26, 2003, Dr. Smith completed a Residual Functional Capacity Questionnaire (Tr. 325-29).  On the questionnaire he noted that he had seen Plaintiff on two occasions and that he had diagnosed her with degenerative disc disease (Tr. 325).  Dr. Smith remarked that Plaintiff could stand/walk less than two hours in an eight-hour day and sit for four hours in an eight-hour day (Tr. 327).  Dr. Smith additionally stated that Plaintiff must lie down approximately four hours in an eight-hour day (Tr. 329).  He stated Plaintiff could lift less than ten pounds on an occasional basis, could never twist, crouch or climb ladders and stairs (Tr. 328).  Dr. Smith stated that, a result of experiencing "bad days," Plaintiff would be absent from work more than four days per month (Tr. 328).

The next time Plaintiff saw Dr. Smith was approximately two years later, on December 21, 2004, when Plaintiff returned to Dr. Smith seeking a handicapped parking permit (Tr. 502).  Dr. Smith reported that he declined to issue her such a permit because he "did not think that [would be] fair," as he believed such permits should only be given to persons "in wheelchairs, *etc.*" (Tr. 502).  Dr. Smith gave Plaintiff a lumbar brace and noted that he did not believe there was anything else he could offer her in terms of treatment (Tr. 502).

---

[6]Standing x-rays are apparently obtained while the patient stands (*see* Tr. 745).  There are no standing x-ray or standing MRI results in the record.

On February 13, 2004, Plaintiff was assaulted—during which, among other things, her right knee was injured (Tr. 346, 611 ).  An x-ray of her right knee revealed osteoarthritis (Tr. 348).

On March 18, 2004, Hung Tran. M.D. ("Dr. Tran") performed a physical consultative examination (Tr. 349-54).  His diagnoses were of obesity and right knee and back pain (Tr. 351).  Dr. Tran's overall impression was as follows: "No cooperation.  Patient refuses simple tests" (Tr. 351).

As a result of her knee pain, Plaintiff began treating with William Pujadas, M.D. ("Dr. Pujadas") (Tr. 463).  After conservative treatment on her knee proved unsuccessful, Plaintiff underwent arthroscopic knee surgery on August 6, 2004 (Tr. 363-64).  Thereafter, Plaintiff successfully completed physical therapy, which lasted from August 9, 2004 to October 6, 2004 (Tr. 464-96).

From December 22, 2004 through June 14, 2006, Plaintiff sought treatment from her family physician at the Larmoyeux Clinic for various ailments, including throat, shoulder, knee, and back pain (Tr. 518-28; 89-118).  X-rays of Plaintiff's lumbar spine, taken on June 20, 2006, revealed minimal sclerotic change at the right side at L5-S1 suggesting facet degenerative disease (Tr. 85).

On March 28, 2005, Plaintiff sought treatment from Charles C. Green, M.D. ("Dr. Green") for a sore throat (Tr. 504).  She reported to Dr. Green that for exercise she walks one mile five days per week (Tr. 504).

On August 31, 2006, Plaintiff was examined by Shahriar Nabizadeh, M.D. ("Dr. Nabizadeh").  He diagnosed Plaintiff with severe right knee osteoarthritis and chronic back pain (Tr. 120).  Dr. Nabizadeh completed a Physical Residual Functional Capacity

Questionnaire (Tr. 121-25), wherein he noted that Plaintiff could sit for four hours in an eight-hour workday and stand/walk for less than two hours in an eight-hour workday, could rarely lift ten pounds and occasionally lift less than ten pounds, would miss more than four days per month as a result of her impairments on "bad days," and would require the need to lie down for four hours in an eight-hour workday (Tr. 124-25).

At the administrative hearing of September 13, 2005 (Tr. 594-639), Plaintiff stated that her back pain occasionally radiates down her leg, and that physical therapy, trigger point injections, and medications do not relieve her pain (Tr. 607-08). Plaintiff testified that on an "average day" she lies in a recliner, or bed, for approximately five hours in an eight-hour time period (Tr. 613). She stated she cooks once or twice per week, does not vacuum or dust, and is able to drive (Tr. 617).[7] Plaintiff testified that she uses a motorized cart at the grocery store (Tr. 617), and has difficulty sleeping because of pain (Tr. 618).

At the administrative hearing conducted on September 6, 2006 (Tr. 550-93), Plaintiff testified that she was hired in January 2006 and worked for forty hours per week as a companion for a month or two, but slowly reduced her work to one day per week due to pain (Tr. 558-63; Tr. 768). She stated that she could not continue working full-time because she needed to lie down and rest for four to five hours per day (Tr. 565, 570). At the December 16, 2008 hearing, Plaintiff stated that while she worked as a companion she was able to stand for approximately three and one half hours total in a eight-hour day and sit for approximately four and one half hours total in a eight-hour day (Tr. 770).

---

[7]It should be noted that Plaintiff's statements of record are inconsistent with respect to her ability to drive. For instance, in her application for disability benefits, Plaintiff states "my condition won't allow me to drive" (Tr. 196); however, at the 2005 and 2006 administrative hearings, Plaintiff reported that she does drive—sometimes for up to twenty minutes at a time (*see* Tr. 572, 617, 727).

Dr. Witkind, the testifying medical expert and neurosurgeon, stated that, based on his review of the medical record and the inconsistencies contained therein, he is essentially of the opinion that Plaintiff is "malingering" (Tr. 740).

In his June 18, 2009 opinion (Tr. 643-59), the ALJ found Plaintiff had the severe impairments of degenerative disc disease at L5-S1, history of right knee surgery, and obesity (Tr. 645). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with no more than six hours of walking or standing during an eight-hour day, no more than occasional bending, stooping, crouching, kneeling, or stair-climbing, and no climbing of ladders, ropes, or scaffolds (Tr. 646).[8]  Based on Plaintiff's found RFC, the ALJ relied on the testimony of the VE, and determined (at step five) that Plaintiff could return to her past relevant work as a bus driver, as she performed that job (Tr. 657). As an alternative basis for denying Plaintiff's claim, the ALJ, relying on the VE's testimony, found (at step six) that Plaintiff could perform other work in the regional and national economy that exists in substantial numbers (Tr. 658). Consequently, the ALJ denied Plaintiff's claim for disability benefits.

## IV. Analysis

**A.**   **Whether the ALJ Improperly Discounted Plaintiff's Subjective Complaints of Pain**

Plaintiff argues that the ALJ improperly discounted her subjective complaints of pain and failed to properly assess her credibility (Doc. #22 at 12-20). For the reasons stated

---

[8]Light work requires the ability to lift and carry twenty pounds occasionally and up to ten pounds frequently, sitting up to six hours of an eight-hour workday, and standing/walking six or more hours in an eight-hour workday.  20 C.F.R.§ 404.1567(b); *see also* SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Nov. 30, 1982).

herein, the undersigned is not persuaded.

When considering Plaintiff's credibility, pain and subjective symptoms alone can be impairments which result in a claimant being disabled. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). A reviewing court decides whether the Commissioner's findings are consistent with the proper legal standard and are supported by substantial evidence. *Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987). 42 U.S.C. § 423 (d)(5)(A) sets forth the conditions by which a claimant's subjective symptoms of pain may establish a disability.

The Eleventh Circuit has interpreted the aforementioned statute to require the Commissioner to consider a claimant's subjective testimony if the claimant has established: (1) evidence of an underlying medical condition; and either (2) objective medical evidence that confirms the severity of the alleged pain or restrictions arising from that condition; or (3) evidence that the objectively determined medical condition is such that it can be reasonably expected to give rise to the claimed pain or restriction. *Foote*, 67 F.3d at 1560-61; *Marbury*, 957 F. 2d at 839; *Holt v. Sullivan*, 921 F. 2d 1221, 1223 (11th Cir. 1991).

While the ALJ must consider a plaintiff's subjective testimony regarding pain that restricts his or her ability to work, the ALJ may reject the testimony as not credible and such a determination will be reviewed under the substantial evidence standard. *Marbury*, 957 F.2d at 839. Furthermore, the ALJ's determinations as to the credibility of a plaintiff will not be overturned if, reviewing the entirety of the record, there is substantial evidence supporting a finding of non-credibility. *Foote*, 67 F.3d at 1562.

In this instance, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to produce "some" of her alleged symptoms; however,

Plaintiff's statements concerning the intensity, duration, and limiting effects of those symptoms were not entirely credible (Tr. 647). The ALJ gave multiple reasons why he discredited Plaintiff's subjective complaints of pain and questioned her credibility (Tr. 647-56). As will be discussed more comprehensively below, the undersigned finds the reasons cited by the ALJ are sufficient as they are supported by substantial evidence of record.

Specifically, the ALJ considered Plaintiff's subjective complaints and determined that her statements regarding her impairments, pain, and their impact on her ability to work were not entirely credible in light of: (1) the minimal objective findings; (2) the lack of ongoing treatment; (3) her failure to cooperate during a consultative examination; (4) evidence of symptom exaggeration; and (5) several medical opinions indicating that Plaintiff was capable of working full-time (Tr. 18-19).

More particularly, the ALJ noted that the objective findings with respect to Plaintiff's back impairment were minimal (Tr. 647). An ALJ may appropriately find a claimant not credible where discrepancies exist between the objective clinical findings and the claimant's description of her impairments. *Edwards*, 937 F.2d at 584. A December 2002 MRI study showed a "very small" left paracentral disc herniation, but no stenosis and no significant facet degenerative change (Tr. 233). A November 2002 thoracic spine x-ray was normal (Tr. 246). A June 2006 x-ray of the lumbar spine revealed only "very minimal" sclerotic change on the right side at L-5 (Tr. 85). The ALJ determined, with the aid of Dr. Witkind's testimony, that the minimal nature of these findings was inconsistent with the degree of pain and functional limitations alleged by Plaintiff (Tr. 648).

The ALJ additionally noted that, even though Plaintiff consistently reported pain levels of ten on a ten-point scale, she had not continuously sought treatment for her back

14

impairment and had declined many recommended treatment modalities (Tr. 647).  The ALJ noted that Plaintiff declined epidural steroid injections, failed to complete a course of physical therapy, failed to follow recommendations to lose weight, and was not taking any pain medication (Tr. 647).  "[An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints."  SSR 96-7, 1996 WL 374186, at *7 (S.S.A. July 2, 1996).  The Eleventh Circuit has specifically held a claimant's conservative treatment, or non-treatment, may be used as evidence to discredit the claimant's subjective complaints.  *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996); *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984) (finding the ALJ properly rejected the claimant's subjective complaints of pain because, *inter alia*, the claimant failed to seek medical treatment until after her claim for benefits initially was denied).

A review of the record evidence reveals Plaintiff was consistently prescribed conservative treatments such as physical therapy, pain management, and pain medication. Nowhere in the record has back surgery been recommended.

Records from Baptist Health show that Plaintiff was discharged from physical therapy due to non-compliance on December 12, 2002 (Tr. 231).  The physical therapist observed that Plaintiff had a normal gait pattern and no trouble with sitting down or standing up (Tr. 231).  The physical therapist additionally noted that Plaintiff presented with an "inconsistent pain pattern" (Tr. 235).

Plaintiff reported on many occasions that she was not using either prescription or non-prescription pain medication (Tr. 647).  When examined by Dr. Hofmann, on August 26, 2003, Plaintiff reported that she was not taking any medications (Tr. 291).  At the 2005 and 2006 administrative hearings, Plaintiff testified that she was currently taking nothing

15

for her pain (Tr. 573, 608).  At the 2008 administrative hearing, Plaintiff testified that she had not received any treatment for her back since she last saw Dr. Smith on December 21, 2004 (*see* Tr. 502-747).  The ALJ reasonably concluded that Plaintiff's non-use of pain medication and her failure to pursue treatment did not corroborate her complaints of unrelenting debilitating pain and functional limitation.  *See Nelson v. Sullivan*, 966 F.2d 363, 367 (8th Cir. 1992) ("[plaintiff] stated he had chronic excruciating pain and yet took no medication other than Tylenol . . . ."); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992) ("The only medication for pain [the claimant] has taken is Anacin #3 [an over-the-counter pain reliever]. . . ."); *Blacha v. Secretary of Health & Human Services*, 927 F.2d 228, 231 (6th Cir. 1990) ("[Claimant's] use of only mild medication (aspirin) undercuts complaints of disabling pain").

The ALJ additionally noted that Plaintiff failed to cooperate during a consultative examination with Dr. Tran, who examined Plaintiff on March 18, 2004 (Tr. 648; *see also* Tr. 349-52).  Plaintiff appeared at the examination with two crutches and refused to attempt to walk by herself (Tr. 351); however, she had no difficulty getting on and off the examination room table or in and out of a chair (Tr. 350).  Dr. Tran noted that Plaintiff was not cooperative and that she "refused even simple tests" (Tr. 351).  Efforts to impede accurate testing imply a lack of credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Rautio v. Bowen*, 862 F.2d 176, 179-80 (8th Cir. 1988) (determining that failure to cooperate during examinations supported ALJ's conclusion that claimant was not credible).

Similarly, Dr. Hofmann observed many inconsistencies during his examination of Plaintiff on August 26, 2003 (Tr. 293).  For instance, Dr. Hofmann noted that Plaintiff reported that her pain was at a level ten, but she was not on any pain medication and did

16

not appear uncomfortable (Tr. 293).  In addition, Dr. Hofmann noted that Plaintiff reported pain with maneuvers that did not place significant stress on her spine (Tr. 293), and that she reported pain with supine straight leg raising tests, but reported no symptoms when the test was performed in the seated position (Tr. 293).  Dr. Hofmann also remarked that, although Plaintiff attributes her back pain to the November 8, 2002 lifting incident, she "admits that she did not experience lower back pain until 11/12/02.  If significant injury occurred as a result of the 11/08/02 lift, I would have expected back pain immediately or at least the first day of the incident, which was not the case" (Tr. 293).  Dr. Hofmann concluded that, in his opinion, work restrictions were not appropriate with respect to her November 8, 2002 lifting incident (Tr. 294).

A physical therapist also noted similar inconsistent pain behaviors with respect to straight leg raising tests (Tr. 235, 239, 240-42).  Plaintiff's failure to cooperate and the inconsistent findings noted by Dr. Hofmann and the physical therapist were factors the ALJ discussed in support of his credibility determination.  Dr. Witkind, the medical expert and neurosurgeon who testified at the 2008 hearing, stated that he would classify these inconsistences, *supra*, as "malingering" (Tr. 740).

As additional support for his credibility determination, the ALJ noted that several physicians indicated Plaintiff is capable of performing light work (Tr. 654-55).  Specifically, the ALJ mentions that shortly after her work-related injury, Dr. Trainer reported that Plaintiff was immediately capable of returning to light work with restrictions (Tr. 229).  The ALJ also referenced the fact that, in 2003, Dr. Switzer, an orthopedist, placed Plaintiff on light duty work status (Tr. 258-59, 655).  Moreover, the ALJ pointed out that Dr. Hofmann noted symptom magnification indicated that work restrictions in relation to Plaintiff's November

17

8, 2002 injury were not appropriate (Tr. 294, 654-55).

The ALJ accepted the testimony of Dr. Witkind, the medical expert, that no one with Plaintiff's type of x-ray and MRI findings would be required to lie down for four hours in an eight-hour day (Tr. 654-55; *see also* Tr. 742).  When a medical professional functions as an expert witness in the course of an evidentiary hearing before an administrative law judge, Social Security Ruling 96-6p designates such professional as a medical expert, and an ALJ may rely upon testimony of a medical expert when evaluating the nature and extent of a claimant's impairments.  SSR 96-6p, 1996 WL 374180, at *4 n. 2 (1996); *see also Richardson*, 402 U.S. at 408.  The ALJ noted that, although Plaintiff maintained that she was unable to perform the 2006 companion job for more than two months, there are no treatment records which reflect that this activity exacerbated her overall medical condition (Tr. 654).  Further, Plaintiff testified that, while working as a companion, she was able to work forty hours per week, stand for up to three and one half hours, and sit for up to four and one half hours per eight-hour workday (Tr. 654; Tr. 770).

If an ALJ gives at least three reasons for discrediting a plaintiff's subjective complaints of pain, a court may find the ALJ properly discredited the subjective pain testimony.  *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989).  Based on the foregoing, the undersigned finds the ALJ properly discredited Plaintiff's subjective complaints of debilitating pain.

**B.     Whether the ALJ Properly Discounted the Opinions of Drs. Weiss, Smith, and Nabizadeh**

Plaintiff further argues that the ALJ did not give sufficient weight to the opinions of Dr. Smith and Dr. Nabizadeh (*i.e.*, that Plaintiff cannot meet the demands of work on a

regular and consistent basis) (Doc. #22 at 20-22).  The undersigned finds this argument unpersuasive because the ALJ articulated several reasons for discounting the opinions of these doctors, and such reasons are supported by substantial evidence of record (Tr. 650-56).  Moreover, the undersigned finds the ALJ fully complied with the requirements of this Court's prior Order of Remand, which directed the Commissioner to: (1) reconsider Dr. Weiss' opinion as to lifting; (2) re-weigh the opinion evidence of Dr. Smith; (3) reevaluate the opinion evidence provided by Dr. Nabizadeh; and (4) give no weight to the opinions of a Single Decision Maker.  *See Bolton v. Astrue*, No. 3:07-cv-612-J-HTS (M.D. Fla. 2008) (Doc. #15).

As an initial matter, it should be noted that Plaintiff cited evidence of record, but did not cite any case law or Social Security Regulations in support of her arguments in this regard.

The Social Security Regulations provide guidelines for the ALJ to use when evaluating medical opinion evidence.  *See* 20 C.F.R. § 404.1527.  An ALJ considers many factors when weighing medical opinions, including the examining relationship, the treatment relationship, how supported an opinion is, whether an opinion is consistent with the record, and a doctor's specialization.  20 C.F.R. § 404.1527(d)(1)-(6).  Generally, the opinions of examining physicians are given more weight than non-examining physicians, treating physicians are given more weight than non-treating physicians, and specialists are given more weight on issues within their areas of expertise than non-specialists.  *See* 20 C.F.R. § 404.1527(d)(1), (2), (5).  When the ALJ does not give a medical source's opinion controlling weight, the ALJ applies factors such as the length of treatment, the frequency of examination, the nature and extent of the relationship, as well as the supportability of the

opinion, its consistency with other evidence of record, and the specialization of the physician. *See* 20 C.F.R. § 404.1527(d)(2)-(6).

Here, the ALJ noted that Drs. Smith and Nabizadeh did not provided treatment to Plaintiff and had seen her infrequently (Tr. 651-52).[9]  Thus, the ALJ concluded that Drs. Smith and Nabizadeh were not treating sources and their opinions were not entitled to treating source deference. *See Crawford v. Barnhart*, 363 F.3d 1155, 1160 (11th Cir. 2004) (examination on only one occasion not entitled to great weight); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (two examinations insufficient to confer treating physician status).

Although Plaintiff argues that the opinions of Dr. Smith and Dr. Nabizadeh are consistent with her testimony, her argument does not account for the ALJ's discussion of her work activity, minimal objective medical imaging findings, Dr. Hofmann's finding of symptom magnification, the inconsistencies noted during her physical therapy sessions, Plaintiff's minimal treatment, or her lack of cooperation during the examination with Dr. Tran, *supra*.  The ALJ recognized the opinions of Drs. Smith and Nabizadeh, but found the opinions of Dr. Witkind, Dr. Switzer, and Dr. Hofmann more accurately represented Plaintiff's ability to function and work (Tr. 654-55).

As noted previously, on November 26, 2003, Dr. Smith reported that he had seen Plaintiff on only two occasions (Tr. 325).  Dr. Smith remarked that Plaintiff could stand/walk less than two hours in an eight-hour day and sit for four hours in an eight-hour day (Tr. 327).  Dr. Smith additionally stated that Plaintiff must lie down approximately four hours in an eight-hour day (Tr. 329).  He stated Plaintiff could lift less than ten pounds on an

---

[9]The record reflects that Dr. Smith saw Plaintiff for treatment on two occasions in 2002 and once in 2004 (Tr. 325, 502).  Dr. Nabizadeh saw Plaintiff only once (Tr. 119-25).

occasional basis, could never twist, crouch, or climb ladders and stairs (Tr. 328).  Dr. Smith stated that, as a result of experiencing "bad days," Plaintiff would be absent from work more than four days per month (Tr. 328).

The ALJ noted that such limited restrictions were not corroborated by the objective test results, Dr. Smith's own examination findings, or the treatment he prescribed—*i.e.*, medication to help her sleep and a lumbar brace (Tr. 333, 502, 652).  Dr. Smith declined to prescribe Plaintiff narcotic pain relievers and reported that he did not believe there was anything else he could offer her in terms of treatment (Tr. 333, 502, 652).  In making this determination, the ALJ also relied, in part, on the opinion of the testifying medical expert, Dr. Witkind, who testified unequivocally that Plaintiff's medical findings do not indicate a need to lie down for four hours per eight-hour day, and that Dr. Smith's limitations are "not even compatible with his own examination, which [wa]s a normal neurological examination" (Tr. 654-55; *see also* Tr. 742, 745).  With respect to Dr. Smith's opinion that Plaintiff would need to miss four days of work per month due to her symptoms, apart from her testimony which the ALJ found not credible, there is no support for this limitation in the record (Tr. 654-55).

The next time Plaintiff saw Dr. Smith was approximately two years later, on December 21, 2004, when Plaintiff returned to Dr. Smith seeking a handicapped parking permit (Tr. 502).  Dr. Smith reported that he declined to issue her such a permit because he "did not think that [would be] fair," as he believed such permits should only be given to persons "in wheelchairs, etc." (Tr. 502).

Dr. Nabizadeh only saw Plaintiff on one occasion (*see* Tr. 119-25).  He reported on a Physical Residual Functional Capacity Questionnaire essentially the same restrictive

limitations as Dr. Smith, *supra* (*see* Tr. 121-25; *see also* Tr. 325-29).  Again, the ALJ noted that such limitations are neither supported by the other evidence of record, nor the testimony of Dr. Witkind (Tr. 652-56; *see also* Tr. 744-48, 751-55).  The ALJ keenly recognized that Drs. Smith and Nabizadeh apparently relied on Plaintiff's subjective complaints of pain when rendering their opinions in this regard (Tr. 653).  A physician's report that merely parrots the assertions of a patient whom the ALJ has not found credible is not objective medical evidence and should not be accorded significant weight.  20 C.F.R. § 404.1527(d)(2); *Phillips*, 357 F.3d at 1241.

With respect to Dr. Weiss' March 24, 2003 opinion that Plaintiff could only lift five pounds, the ALJ noted that Dr. Weiss only saw Plaintiff twice in relation to Plaintiff's claim for Workman's Compensation; therefore, he would not be considered a treating physician (Tr. 649; *see also* Tr. 266).  The ALJ also noted that Dr. Weiss did not state that such a limitation was permanent in nature, and that in making his assessment Dr. Weiss noted that Plaintiff was not at maximum medical improvement (Tr. 649; *see also* Tr. 266).  The ALJ points out that, during this time period, Plaintiff was working light duty as a cafeteria worker (Tr. 649).  In addition, the ALJ noted that on June 18, 2003 (the second time Dr. Weiss saw Plaintiff), Dr. Weiss: (1) assessed a five percent whole body impairment; (2) reported Plaintiff could work a modified-duty sedentary job for eight hours per day; and (3) did not state that Plaintiff was restricted to lifting only five pounds (Tr. 649; *see also* Tr. 267).

The ALJ gave no weight to the opinion evidence of a Single Decision Maker (*see* Tr. 643-59).

Based on the foregoing, the undersigned finds the ALJ articulated several reasons for discounting the opinions of Drs. Weiss, Smith, and Nabizadeh, and that such reasons

22

are supported by substantial evidence of record (Tr. 650-56).

## V. Conclusion

Review of the record as a whole reveals substantial evidence supports the ALJ's finding of non-disability.  Accordingly, and for the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.  Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 22nd day of March, 2011.


Copies to all counsel of record

**THOMAS E. MORRIS**
United States Magistrate Judge